UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| PEDRO E. SANTIAGO, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12-cv-00339-GZS |
| | ) | |
| STATE OF MAINE, | ) | |
| | ) | |
| Respondent | ) | |

**RECOMMENDED DECISION**

Pedro E. Santiago filed a petition (ECF No. 1) pursuant to 28 U.S.C. § 2254, challenging his state court conviction for murder, alleging violations of his federal constitutional rights. The State of Maine responded with a motion to dismiss the petition (ECF No. 5), claiming it was time-barred, pursuant to 28 U.S.C. § 2244(d)(1)(A) & (2). I ordered the State to file an additional memorandum of law with record supplementation and a timeline, and gave Santiago the opportunity to respond, to further address the issue as to when the limitations period was tolled, pursuant to 28 U.S.C. § 2244(d)(2). (ECF No. 7.) I have reviewed the submissions provided by both the State and Santiago and recommend that the Court deny the petition as untimely.

**PROCEDURAL BACKGROUND**

Santiago was indicted for one count of murder, pursuant to 17A M.R.S. § 201(1)(A), in December 2003. (State Court Record at 2, ECF No. 5-1.) Following a seven-day jury trial in May 2005, he was convicted and sentenced in November 2005 to forty years of imprisonment. (State Court Record at 6-7, 9.) The Law Court denied his application for a sentencing review in

April 2006[1] and affirmed the conviction in a memorandum of decision.  (State of Maine v. Santiago, No. Mem.-07-26, Jan. 25, 2007; State Court Record at 17.)  Santiago did not file a petition for a writ of certiorari with the United States Supreme Court.  (Petition at 3.)

Santiago filed his first state court petition for post-conviction review on June 20, 2007. (Supplemental State Court Record at 2, ECF No. 9.)  The Superior Court issued a summary dismissal, which was entered by the court on July 2, 2007.  (Supplemental State Court Record at 2, 7.)  The Superior Court noted that Santiago had not requested court-appointed counsel and dismissed the petition because it failed to state any grounds for post-conviction review. (Supplemental State Court Record at 7.)  There is space on the petition form for the petitioner to state grounds for relief and provide supporting facts, but Santiago left this section completely blank.  (Supplemental State Court Record at 5-6.)

Santiago filed his second state court petition for post-conviction review on July 25, 2007. (State Court Record at 18.)  The Superior Court held a three-day evidentiary hearing, and on March 17, 2011, it entered a denial of the amended petition.  (State Court Record at 26-27.) Neither the second state court petition nor the court's decision on it is in the record.  Santiago requested a certificate of probable cause from the Law Court, which issued an order accepting his appeal as timely filed, and later issued an order denying a certificate of probable cause, on November 16, 2011, after full appellate review.  (State Court Record at 31, 34.)  Rule 14(b)(1) of the Maine Rules of Appellate Procedure requires that a motion for reconsideration be filed within fourteen days of the decision, and hence Santiago had through November 30, 2011, to file a

---

[1]      The notice of appeal was entered on the docket (State Court Record at 9, ECF No. 5-1), and the State represents that the Law Court denied leave to appeal the sentence on April 7, 2006, although the docket sheet for the sentencing appeal is not included in the record.  (Motion to Dismiss at 2, ECF No. 5.)  Santiago stated in his first and third state court post-conviction petitions that he did not apply for permission to appeal the sentence.  (Supplemental State Court Record at 3, 10, ECF No. 9.)

motion.  He filed his motion for reconsideration on December 6, 2011, which was six days

beyond the deadline.  (State Court Record at 34.)  On January 19, 2012, the Law Court issued an

order denying Santiago's motion to reconsider.  (State Court Record at 34; Attachment to

Supplement to Response, ECF No. 11-1.)

Santiago filed his third state court petition for post-conviction review on May 3, 2012.

(Supplemental State Court Record at 9.)  The Superior Court entered an order of summary

dismissal on August 23, 2012, noting that Santiago had not requested court-appointed counsel.

(Supplemental State Court Record at 9, 36.)  Santiago filed a motion for reconsideration on

September 11, 2012, citing among other cases <u>Martinez v. Ryan</u>, --- U.S. ---, 132 S. Ct. 1309

(2012), which concerns claims of ineffective assistance of counsel in initial-review collateral

proceedings.  (Supplemental State Court Record at 9, 42.)  The Superior Court denied the motion

by a written decision and order that was entered by the court on October 22, 2012.

(Supplemental State Court Record at 9, 41.)

Santiago signed the pending federal petition on October 22, 2012, and filed it on

November 7, 2012.  (Petition at 1, 17.)  The parties agree that October 22, 2012, is the effective

date of filing.  (Motion to Dismiss at 4; Response at 4.)  Santiago asserts that this was the date on

which he signed and mailed the petition.  <u>See</u> Rules Governing Section 2254 Cases in the United

States District Courts, Rule 3(d).  I accept the parties' agreed date of October 22, 2012,

notwithstanding that Santiago's cover letter is dated October 25, 2012, and the postmark date is

not indicated on the copy of the envelope that is in the record because the full postmark was not

copied.  (ECF No. 1-5, 1-6.)

### DISCUSSION

**1.   General Rules for Determining Timeliness of the Federal Petition**

A petitioner in custody pursuant to a state court judgment has one year in which to apply for a writ of habeas corpus in federal court.  See 28 U.S.C. § 2244(d)(1).  There are four different dates from which the one-year limitations period may run, and the petitioner's filing will be timely if it falls inside the latest measure.  Id.  In this case, the limitations period ran from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  Id. § 2244(d)(1)(A).  A conviction is final when the "availability of direct appeal to the state courts and to [the United States Supreme Court] has been exhausted."  Jimenez v. Quarterman, 555 U.S. 113, 119 (2009) (citations and quotation marks omitted).  For both state and federal prison inmates who do not seek a writ of certiorari from the United States Supreme Court, final judgment does not occur until "the time for filing a certiorari petition expires."  Id. (citations and quotation marks omitted).  The time for filing a certiorari petition expires 90 days after the entry of judgment, pursuant to Rule 13 of the Supreme Court Rules.

The one-year limitations period under section 2242(d)(1) does not necessarily run for 365 consecutive days; it is tolled, i.e., suspended, while a post-conviction review or other collateral review is pending.  28 U.S.C. § 2244(d)(2).  "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  Id. To calculate the running of the limitations period and tolling periods, the Court must consider the meaning of the terms "pending" and "properly filed" in section 2244(d)(2).  As to whether a

post-conviction or collateral review is "pending" for purposes of tolling the limitations period, the First Circuit has held that a state's procedural rules control.  Drew v. MacEachern, 620 F.3d 16, 21 (1st Cir. 2010) (citing Carey v. Saffold, 536 U.S. 214, 220 (2002)).  "An application for state post-conviction relief is pending from the time it is first filed until the time it is finally disposed of and further appellate review is unavailable under the particular state's procedures." Id. (alterations and quotation marks omitted).  The time during which an application is pending includes "the interval between a lower court's entry of judgment and the filing of an appeal with a higher state court."  Id. at 20.  However, it does not include the period "'between the expiration of the time for appeal and the filing of a petition for a belated appeal'" in cases in which the state court reopens post-conviction review based on an untimely application.  Id. at 21-22 (quoting Streu v. Dormire, 557 F.3d 960, 966 (8th Cir. 2009)).  As to whether the application was "properly filed," the Supreme Court has held that a post-conviction petition that has been rejected by the state court as untimely is not "properly filed" pursuant to section 2244(d)(2) and therefore does not toll the limitations period.  Pace v. DiGuglielmo, 544 U.S. 408, 413-15 (2005) (discussing Carey, 536 U.S. at 225-26; Artuz v. Bennett, 531 U.S. 4, 8-9 & n.2 (2000)).  The Supreme Court responded to the petitioner's fairness argument that a

> petitioner trying in good faith to exhaust state remedies may litigate in state court for years only to find out at the end that he was never "properly filed," and thus that his federal habeas petition is time barred.  A prisoner seeking state postconviction relief might avoid this predicament, however, by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.

Pace, 544 U.S. at 416 (citation and quotation marks omitted).

The Supreme Court has recognized that section 2244(d) "is subject to equitable tolling in appropriate cases."  Holland v. Florida, --- U.S. ---, 130 S. Ct. 2549, 2560 (2010).  The Court has established a two-prong test for equitable tolling that requires a petitioner to show: "'(1) that he

has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Id. at 2562 (quoting Pace, 544 U.S. at 418).  Santiago has not attempted to make a case for equitable tolling and there are no facts indicating any basis for an argument for its application.

### 2.   A Five-Step Calculation to Determine Timeliness

When there are tolled days that must be taken into account and several tolling periods that potentially interrupt the limitations period, the use of a step-by-step calculation to determine whether an application is timely may help make both the consideration of the legal issues and the math as transparent as possible for review.  I have used the following five steps, which yield the number of days by which the petition was filed in advance of or after the deadline, whatever the case may be.  I discuss the steps in general in this section of the recommended decision.  The remaining sections then discuss these steps as applied to the multiple state court petitions at issue in this case.

First, I determine the total number of days between the final state court judgment and the filing of the federal petition.  This number excludes the date on which the final state court judgment was entered, pursuant to Fed. R. Civ. P. 6(a)(1)(A), but it includes the date on which the federal petition was filed, pursuant to Rule 6(a)(1)(C).[2]

Second, I determine the total number of days allocated to tolling for each of the petitions that can be considered properly filed and pending under section 2244(d)(2).

---

[2]      Rule 12 of the Rules Governing Section 2254 Cases states: "The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules."  Rule 6(a)(1) of the Federal Rules of Civil Procedure provides that when a limitations period is stated in days or a longer unit such as the one-year period applicable here, the day of the event that triggers the period is excluded from the calculation of that period, pursuant to Rule 6(a)(1)(A), but the last day of the period is included, pursuant to Rule 6(a)(1)(C).

Third, I subtract the tolling days from the total days between the final judgment and the filing of the federal petition.  This yields the number of days it took the petitioner to file, excluding tolled days.

Fourth, I calculate the number of days the petitioner would have had if the limitations period of one year had run in consecutive days.  The reason for this is that a one-year limitations period, when measured from the actual calendar dates that apply in any given case, may translate into something other than 365 days.  "When a limitations period is measured in years, the last day for instituting the action is traditionally the anniversary date of the start of the limitations period."  Lattimore v. Dubois, 311 F.3d 46, 54 (1st Cir. 2002).

This fourth step is made a bit more complicated by the operation of Fed. R. Civ. P. 6(a).  Rule 6(a) states that it applies "in computing any time period specified in  . . . any statute that does not specify a method of computing time."  Here, the applicable statute is 28 U.S.C. § 2244, which provides for four different methods of determining a start date but does not specify a method of computing the end date of the limitations period.  Therefore, Rule 6(a)(1) must be taken into account in determining the length of the limitations period set forth in section 2244(d)(1).  Rule 6(a)(1)(C) provides that if the last day of the period falls on a weekend or holiday, "the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday."  Fed. R. Civ. P. 6(a)(1)(C).  The application of this provision does not appear to be restricted to situations in which the filing at issue is actually made on the next day that is not a weekend day or a holiday.  Rather, it appears to apply across the board to the determination of any limitations period, even when that period is determined, as here, solely as a basis for comparison with the limitations period as measured to take into account tolled days.  Under this interpretation of the operation of Rule 6, it is possible for a petitioner to have the benefit of Rule

6(a) twice over, first when the one-year consecutive-day limitations period is translated to calendar days, and second, when the petitioner's actual deadline is calculated with tolling taken into account. Regardless of whether or not the Court interprets Rule 6(a) as I have, however, a different interpretation likely would not work in Santiago's favor and thus would not change the result in this case.

Fifth, I compare the numbers obtained in steps three and four above. If the resulting number in step three is less than or equal to the resulting number in step four, the petition was timely, i.e., the petitioner took one year or less, as measured under the rules, from the time of the final state court judgment to file the federal petition. If the resulting number in step three is more than that resulting in step four, the petition was untimely.

### 3. Calculating Step One: The Total Number of Days from Final State Court Judgment to Filing of Federal Petition

The resulting number from step one, i.e., the total number of days from and including the day *after* the final state court judgment was entered to and including the date on which the federal petition is considered filed, works out to be 2,007 days in this case. I arrive at this number as follows: the state court judgment became final with the Law Court's decision on January 25, 2007. The 90-day period in which to file a petition for a writ of certiorari in the United States Supreme Court began to run on January 26, 2007, and expired on April 25, 2007. (Supplemental State Court Record at 45-48.) See Sup. Ct. R. 13. Pursuant to Fed. R. Civ. P. 6(a), Santiago's one-year limitations period began to run on the day after the 90-day period expired, i.e., it started to run on April 26, 2007. Although Santiago asserts that it started on April 25, 2007 (Response to Motion to Dismiss at 2, ECF No. 6), the correct date is April 26, 2007, pursuant to Fed. R. Civ. P. 6(a)(1)(A), and therefore he has the benefit of this later start date.

The federal petition was filed on October 22, 2012, as discussed above.  There are 2,007 days from and including April 26, 2007, to and including October 22, 2012.[3]

### 4.  Calculating Step Two: The Tolling Periods

Step two from above is to determine the total number of days to allocate to tolling.  This requires the Court to review each of the petitions to determine whether they were "properly filed" and for what length of time they were "pending," pursuant to section 2244(d)(2).  The parties dispute whether the first and third petitions were properly filed.  They agree that the second petition was properly filed but dispute the length of time it was pending—specifically, whether Santiago's untimely motion for reconsideration of the second petition extended the period during which that petition was pending.  I address each of the petitions in turn.

### a.  The first state court petition

The parties dispute whether the first petition was properly filed.  The State argues that it was not properly filed because it contained no substantive ground for review.  (Motion to Dismiss at 2 n.1, Supplemental Memorandum at 3, ECF No. 8.)  Santiago argues that the fact that the first petition was docketed indicates that it was properly filed.  (Response to Motion to Dismiss at 5, ECF No. 6.)  Surprisingly, the issue presented by this relatively simple question is for me the most difficult part of this otherwise fairly straightforward tolling case.  Not surprisingly, the resolution of this simple question is outcome-determinative in this case.

I conclude that the first petition was not properly filed because it failed to state any substantive ground for review.  In <u>Artuz</u>, the Supreme Court stated that "the question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar."  531 U.S. at 9 (emphasis

---

[3]       To determine the number of days between two calendar dates, I have used two date calculators that are readily available on the Internet and compared the results to verify their accuracy.

omitted).  The Court held that state procedural bars that "simply prescribe a rule of decision," did not preclude the application from being deemed "properly filed" under section 2244(d)(2).  Id. at 10-11.  The procedural bars at issue in Artuz were (1) claims that had previously been determined on the merits in an appeal or (2) claims that could have been raised on direct appeal but were not.  Id.  These the Court considered "conditions to obtaining relief" that were properly filed rather than "conditions to filing" that were not properly filed.  Because the application was properly filed, it tolled the limitations period.  Id.

In contrast, in Pace, the Supreme Court held that conditions to filing, as opposed to conditions to obtaining relief, "go to the very initiation of a petition and a court's ability to consider that petition."  544 U.S. at 417.  In that case, the Court held that a time bar was a condition to filing rather than a condition to obtaining relief, and therefore a time-barred petition did not toll the limitations period.  Id.

This case requires the Court to reconcile the holdings of Artuz and Pace and make a determination whether a petition that contains no allegations at all is more like a petition that is procedurally barred because the claims are not reviewable under the state post-conviction statute or more like a petition that is time-barred and therefore cannot be considered.  At least one court has described a petition that fails to "present sufficient allegations to rule on the merits" as "more of a hybrid situation."  Jones v. Knipp, 11-cv-1006-JAM-GGH P, 2011 WL 3555633, at *5, 2011 U.S. Dist. Lexis 89218, at *13 (E.D. Ca., Aug. 11, 2011).  The Jones court concluded that California's insistence that habeas petitions contain sufficient allegations rather than vague and conclusory assertions was a prerequisite to proper filing.  I likewise conclude that the Maine court's decision requiring petitioner to state *some* grounds for relief was a prerequisite to a properly filed petition.  My decision is supported by the fact that although the first petition was

summarily dismissed, there was no procedural bar to prevent a timely second petition from being filed. The Maine court obviously did not view the second petition as a second petition on the merits which would be barred by 15 M.R.S. § 2128, and thus the logical conclusion is that the first petition was not properly filed.

If the petition had been properly filed, the tolling period while it was pending, when added to the tolling period for the second petition, would have rendered the federal petition timely. The first state court petition was pending for 13 days—from and including June 20, 2007, when the first petition was filed, to and including July 2, 2007, when the state court's decision was entered. The order was signed on June 27, 2007 (Supplemental State Court Record at 7), but for tolling purposes Santiago would have received the benefit of the additional five-day period from then to the entry of the decision on July 2, 2007. See M.R. Civ. P. 58, 79(a); Drew, 620 F.3d at 21. In addition, Santiago would have been entitled to include in the tolling period the 21-day period for filing a notice of appeal, pursuant to 15 M.R.S. § 2131 and M.R. App. P. 2(b), before the summary dismissal became a final judgment. The 21-day window for a notice of appeal expired on July 24, 2007, which was the day before Santiago filed his second petition. The resulting thirty-four day tolled period (13 + 21 = 34) would have been outcome-determinative in this case because, as explained below. I ultimately conclude that Santiago's federal petition was late by 17 days—obviously fewer than the 34 days that would have been added to tolling if the first state court petition had been properly filed. I conclude that because the first state court petition was not properly filed, Santiago does not have the benefit of tolling under section 2244(d)(2) during its pendency.

**b.  The second state court petition**

The State concedes that the second state court petition was "properly filed" under 28 U.S.C § 2244(d)(2), and that petition therefore tolled the limitations period.  (Motion to Dismiss at 3-4, ECF No. 5.)  The only dispute is over the length of the tolling period—in particular, its end date.

The State argues that the second petition was pending from and including July 25, 2007, to and including November 16, 2011, which was when the Law Court entered its order denying a certificate of probable cause.  The State argues that Santiago's subsequent motion to reconsider, which was filed on December 6, 2011, was untimely, and therefore the pendency of that motion did not contribute to the tolling period.  (Motion to Dismiss at 3-4 & n.2; Supplemental Memorandum at 3.)  The tolling period under the scenario advocated by the State is 1,576 days.

Santiago argues that the tolling period should include the time when his motion to reconsider was pending.  (Response to Motion to Dismiss at 3; Response to Supplemental Memorandum at 3.)  He argues that although he filed the motion late, the Law Court denied the motion rather than dismissed it, which indicates that the Law Court decided the motion on the merits.  (Response to Motion to Dismiss at 3.)  He argues that any decision on the merits should invoke tolling for the period it is pending.  Santiago therefore advocates for an end date of January 19, 2012, which was when the Law Court denied his motion to reconsider.  (Response to Motion to Dismiss at 3-4.)  The tolling period under the scenario advocated by Santiago is 1,640 days, which is 64 days longer than the State argues it is (1,576 + 64 = 1,640).  (Response to Supplemental Memorandum at 3.)

I conclude that even though Santiago's motion for reconsideration was not timely filed, it had the effect of tolling the limitations period because it was essentially reviewed on the merits.

(Attachment to Supplement to Response, ECF No. 11-1.)  The timeliness of the motion for reconsideration is governed by M.R. App. P. 14(b), which provides that "[a] motion for reconsideration of any decision of the Law Court  . . . shall be filed with the Clerk of the Law Court within 14 days after the date of that decision."  The Law Court's order denying a certificate of probable cause was entered on November 16, 2011.  The 14-day period provided under Rule 14(b) expired on Wednesday, November 30, 2011, and so Santiago's filing on December 6, 2011, was not timely.

Nevertheless, instead of dismissing the motion as untimely, the Law Court appears to have addressed it in accordance with the standard set forth in M.R. App. P. 14(b)(1), i.e. the Law Court appears to have reviewed the motion to determine whether it "[stated] with particularity the points of law or fact that the moving party asserts the Court has overlooked or misapprehended and shall contain such argument in support of the motion as the moving party desires to present."  M.R. App. P. 14(b)(1).  The Law Court denied the motion because, "[c]ontrary to Santiago's assertions, his arguments were considered by the Court under state and federal law," and no further hearing or action was deemed necessary.

Based on the Law Court's apparent decision to consider the motion on its merits, and although it summarized its decision in a cursory manner, I consider this to have "reopened" the post-conviction for purposes of extending the tolling period.  Cf. Drew, 620 F.3d at 21-22 (holding that a reopened petition is not pending between the expiration of the time for appeal and the filing of a petition for a belated appeal).  The Law Court generally uses the term "dismiss" rather than "deny" when it decides an appeal on some threshold matter and does not reach the merits.  See, e.g., Liberty v. Bennett, 2012 ME 81, ¶ 1, 46 A.3d 1141 (dismissing an appeal as interlocutory).

13

Incidentally, the State did not provide a copy of the Law Court's order denying the motion, and before Santiago filed it as an attachment to a supplement to his response, it was not part of the record.  The burden relating to the affirmative defense of the untimeliness of the petition ultimately rests with the State.  See Rules Governing Section 2254 Cases 5(b); Granberry v. Greer, 481 U.S. 129, 135 (1987) (noting that the State had the burden of asserting another of the Rule 5(b) defenses).  I made it clear in my order to supplement that the outcome of the State's motion to dismiss the petition may turn on the interpretation of section 2244(d)(2).  This Court's inquiry into "whether a given state court filing suffices for tolling purposes under § 2244(d)(2) may require more than a cursory examination of a state court's order disposing of the filing."  See Lyons v. Kornegay, 5:11-hc-2165-F, 2012 WL 3522938, at *8, 2012 U.S. Dist. Lexis 114225, at *21 (E.D. N.C., August 14, 2012).  Even in the absence of the Law Court's order, I would have concluded that the State had not met its burden of showing that the motion for reconsideration failed to toll the federal statute.

Although on the facts of this case, I conclude that the motion for reconsideration does toll the limitations period, the tolling would not be in effect between the expiration of the 14-day period for filing a timely motion for reconsideration and the filing of the untimely motion.  See Drew, 620 F.3d at 21-22.  Here, the 14-day period expired on November 30, 2011, and the untimely motion was filed on December 6, 2011.  Thus, tolling would not be in effect for the five days from and including December 1, 2011, to and including December 5, 2011.  Tolling was in effect for the 45 days from and including December 6, 2011, to and including January 19, 2012.  When the Court includes the pendency of the untimely motion with the remainder of the tolling period for the second petition, the sum of these is 1,621 tolled days (1,576 + 45 = 1,621).

### c. The third state court petition

The state court summarily dismissed the third state court petition for several reasons, including most significantly that it was untimely because more than one year had passed from the 2007 decision on the direct appeal to the 2012 filing of the third state court petition. (Supplemental State Court Record at 37.)  Santiago argues that the court dismissed the petition for failure to state a claim and did not clearly state that the petition was dismissed for being untimely.  (Response to Supplemental Memorandum at 4-5.)  Santiago is wrong on this point; the dismissal is clearly due to untimeliness under state law, pursuant to 15 M.R.S.A. § 2128(5) (2003), among other grounds.  (Supplemental State Court Record at 38-38.)  I note that section 2128(5) was recently amended and is now codified in substantially the same form at 15 M.R.S. § 2128-B(1), but I accept that the state court correctly cited to the prior codification as the one applicable to this case.  "Federal courts sitting in habeas must accept state court rulings on state law issues.  An inquiry into the correctness of a ruling on state law issues 'is no part of a federal court's habeas review of a state conviction.'"  Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)).

Section 2128(5) provided in part:

The limitation period runs from the latest of the following:

A.  The date of final disposition of the direct appeal from the underlying criminal judgment or the expiration of the time for seeking the appeal;

B.  The date on which the constitutional right, state or federal, asserted was initially recognized by the Law Court or the Supreme Court of the United States, if the right has been newly recognized by that highest court and made retroactively applicable to cases on collateral review; or

C.  The date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

The court's summary dismissal of the third state court petition was based in part on its untimeliness, pursuant to section 2128(5)(A).  (Supplemental State Court Record at 37.)  Based on this, I conclude that the period during which the third state court petition was pending is not included in the tolling period used to determine the timeliness of the federal habeas petition, pursuant to 28 U.S.C. § 2244(d)(2).  See Pace, 544 U.S. at 413-14.

The state court's decision on the motion for reconsideration filed in conjunction with that third petition does not alter the result, notwithstanding that Santiago raised an issue pertaining to timeliness in his motion for reconsideration.  Santiago may have filed the motion in response to footnote 2 of the state court's order summarily dismissing the petition.  (Supplemental State Court Record at 37 n.2.)  In footnote 2, the court noted that Santiago "does not suggest, nor does the Court perceive, that the alternate periods of 15 M.R.S. § 2128(5)(B)-(C) might apply in this case."  (Supplemental State Court Record at 37.)  Santiago cited Martinez v. Ryan, --- U.S. ---, 132 S. Ct. 1309 (2012), in which the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  Id. at 1315.  Thus, the issue raised by Martinez concerns procedural default in the context of a federal habeas proceeding.  Id.

I conclude that Martinez does not have the effect of extending the limitations period in this case.  The one-year limitations period may run from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  28 U.S.C. § 2244(d)(1)(C).  For several reasons stemming from the Court's language in Martinez, that case does not appear to implicate section 2244(d)(1)(C).  First, the Court took pains to hold explicitly that its decision was based on principles of equity rather than on the

16

Constitution.  Martinez, 132 S. Ct. at 1313, 1315, 1319-20.  Although the dissent in Martinez raises the question whether the majority opinion has "essentially the same practical consequences as a holding that collateral-review counsel is constitutionally required," id. at 1322, the majority opinion makes it clear that this case is not to be interpreted as creating a new constitutional right, see id. at 1319-20.

Second, the Court held that the narrow circumstances in which Martinez applies do not "concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts."  Id. at 1320.   The state court held that the third state court petition was an untimely collateral proceeding.  (Supplemental State Court Record at 37.)  This Court may not second-guess that determination; state court procedure is a matter of state law that the federal court will not disturb in a federal habeas action.  See Rodriguez, 412 F.3d at 37.

Third, the Supreme Court held that, "state collateral cases on direct review from state courts are unaffected by the ruling" in Martinez.  132 S. Ct. at 1320.

If  the third petition had operated to toll the limitations period, it would be considered pending for the 125 days from and including May 3, 2012, which was the date it was filed, to and including September 4, 2012, which was the ten-day deadline  for any motion for reconsideration.  See M.R. Civ. P. 59(e).  To that would be added the 42 days from and including September 11, 2012, which was when the untimely motion for reconsideration was filed, to and including October 22, 2012, which was when the court entered its written decision on the merits denying the motion for reconsideration.  Additionally, the 21-day appeal period, pursuant to 15 M.R.S. § 2131 and M.R. App. P. 2(b), would be counted toward tolling.  These three periods

amount to 188 days (125 + 42 + 21 = 188), which would be added to the 1,621 days during which the second petition was pending (1,621 + 188 = 1,809).  This would render Santiago's federal petition timely because it would bring the number of non-tolled days between the final state court judgment and the filing of the federal petition to 198 days, which is well under the number of days in the one-year limitations period (2,007 − 1,809 = 198).

As Santiago makes clear in his third petition, which was filed on May 3, 2012, just six weeks after the Martinez decision, he wanted to make sure that he had fully exhausted his state claims before filing in federal court.  Unfortunately for him, the state post-conviction process had concluded upon the entry of the final decision by the Law Court in conjunction with the second petition. Filing a third petition which could not be properly filed under state procedural rules cannot operate to toll the limitations period.  See Pace, 544 U.S. at 414 ("When a post-conviction petition is untimely under state law, that is the end of the matter for purposes of § 2244(d)(2).") (quotation marks omitted).  At that point, Santiago's only recourse to stop the clock under section 2244(d)(2) was to file a federal petition.  I express no opinion about whether a petition filed at that point would have been meritorious or even whether any such petition would actually have stopped the clock on the limitations period.  Rather, I conclude only that in the absence of a federal filing, the clock continued to run.

Not surprisingly, Santiago's petition in this Court makes no mention of any defaulted ineffective assistance claims.  Rather, his federal petition lists two grounds relating to the ineffective assistance of trial counsel in failing to subpoena a witness and failing to seek proper jury instructions.  He makes no reference to state post-conviction counsel not fully exhausting those claims and a review of the record would likely establish either that such claims were raised by post-conviction counsel or are not substantial claims within the meaning of the Martinez

holding. Santiago's other four federal claims relate to ineffective assistance of state appellate counsel, legal error by the post-conviction court in applying the incorrect standard relating to ineffective assistance of counsel, prosecutorial misconduct, and the state court's denial of a motion to amend the post-conviction petition, presumably relating to the second petition and the attempt to "fully exhaust" by filing a third petition that raised those pro se claims that were the subject of a disallowed motion to amend and/or the failure of court appointed post-conviction counsel to raise the alleged "thirteenth ground." (See Petition at 3; Attachment to the Petition, ECF 1-2.) Santiago's decision to refile in state court, rather than promptly bringing his claims to this Court, results in his federal claims being time-barred as explained below.

### 5. Calculating Steps Three Through Five: Determining Timeliness

#### a. Review of the undisputed periods

I begin with a review of the number of days in four periods that are relevant to the timeliness calculation; these periods are either undisputed or unaddressed by the parties but likely undisputed because they involve nothing more than the counting of calendar days. First, calculating the number of days that Santiago would have had if the limitations period had run in consecutive days is not addressed by the parties, but is likely undisputed. There were 367 days from and including Thursday, April 26, 2007, to and including Saturday, April 26, 2008. Because the one-year anniversary of April 26, 2007, fell on Saturday, April 26, 2008, see Lattimore, 311 F.3d at 54 (noting that the last day of a limitations period measured in years is the anniversary date of the start of the limitations period), Santiago would have had an additional two days, through Monday, April 28, 2008, which does not appear to have been a legal holiday, to file the federal petition if the limitations period had run in consecutive days without any tolling. See Fed R. Civ. P. 6(a)(1)(C). Thus, pursuant to Rule 6(a)(1), Santiago's "one-year"

limitations period, had it run in consecutive days without tolling, would actually have given him 369 days in which to file his petition.

Second, the parties agree that the limitations period initially began to run from and including April 26, 2007, which was the day after the judgment became final.  Although they dispute whether the first petition tolled the limitations period, they do not dispute that tolling occurred with the filing of the second state court petition on July 25, 2007.  It is unlikely that either party disputes that if the Court determines that the limitations period ran from and including April 26, 2007, to and including July 24, 2007, which was the day before the second petition was filed, that period was 90 days.  This calculation would have left Santiago 279 additional non-tolled days remaining in which to file the federal petition (369 - 90  = 279).

Third, the parties agree that the limitations period was tolled from and including July 25, 2007, which was when the second state court petition was filed, to and including November 16, 2011, which was when the Law Court issued its order denying a certificate of probable cause. The undisputed tolling period thus ran for 1,576 days.

Fourth, the parties agree that the federal petition was filed on October 22, 2012, and it is likely undisputed that there were 2,007 days from and including April 26, 2007, which was the day the one-year limitations period started to run, pursuant to section 2244(d)(1), to and including October 22, 2012.

### b.  Santiago's proposed calculation

Santiago argues for the following tally: (1) his first state court petition adds 8 days to the tolling period; (2) his motion for reconsideration of his second state court petition adds 64 days to the tolling period; and (3) his third state court petition adds 162 days to the tolling period. (Response to Motion to Dismiss at 2-4; Response to Supplemental Motion at 2-4.)  The total of

these is 234 days (8 + 64 + 162 = 234).  The remainder of my calculation of Santiago's proposed

tally works in the numbers I have previously discussed as likely undisputed although in fairness I

point out that Santiago did not assert these numbers himself.  If Santiago's 234 additional tolled

days are added to the undisputed 1,576 tolled days from the second petition, the total is 1,810

tolled days (234 + 1,576 = 1,810).  If this is subtracted from 2,007, which is the total number of

calendar days from and including the day after the date of final judgment to and including the

date on which the federal petition was filed, this leaves 197 non-tolled days in which Santiago

filed his federal petition (2,007 – 1,810 = 197).  This is less than the 369 days he had in which to

make a timely filing.  So calculated, his federal filing would be considered timely.

### c.   The State's proposed calculation

The State argues that there was only one stretch of time in which a properly filed post-

conviction review was pending, and that was from and including July 25, 2007, when the second

petition was filed, to and including November 16, 2011, when the Law Court denied Santiago a

certificate of probable cause.  (Motion to Dismiss at 3-4; Supplemental Memorandum at 3.)  The

State argues that the one-year limitations period expired in August 2012, and Santiago's federal

petition, filed in October 2012, was untimely.  Specifically, the State argues in its supplemental

memorandum that August 17, 2012, rather than the August 20, 2012, date asserted in its motion

to dismiss, was the expiration date of the limitations period.  (Supplemental Memorandum at 4

n.2.)

### d.  My recommendation

I conclude that the only effective tolling period here occurred while the second petition

was pending in state court, and Santiago's petition is time-barred.  The five-step calculation,

under my interpretation of the statutes and rules as discussed above, yields the following:  (1)

There are 2,007 days from and including April 26, 2007, to and including October 22, 2012; (2) tolling from and including July 25, 2007, to and including November 16, 2011, accounts for 1,576 days and there were 45 tolled days from and including December 6, 2011 to January 19, 2012, for a total of 1,621 tolled days (1,576 + 45 = 1,621); (3) there were 386 non-tolled days from the day the judgment was final to the day Santiago filed the federal petition (2,007 − 1621 = 386); (4) Santiago would have had 369 days to file if the limitations period had run in consecutive days; (5) Santiago's federal petition was filed 17 days after the expiration of the one-year limitations period and is time-barred (386 − 369 = 17).

My recommendation can be represented as a simple timeline. The limitations period ran from and including April 26, 2007, which was the date after the expiration of the 90-day window to file a certiorari petition, to and including July 24, 2007, which was the day before Santiago filed the second petition. The tolling period ran from and including July 25, 2007, to and including November 16, 2011, while the second petition was pending. The limitations period started up again from and including November 17, 2011, and ran to and including December 5, 2011. The limitations period was again tolled when the motion to reconsider was filed, from and including December 6, 2011, to and including January 19, 2012.[4] Santiago's third state court petition had no effect on the limitations period. See Pace, 544 U.S. at 416. The limitations period expired on Friday, October 5, 2012. Santiago filed his federal petition on October 22, 2012, which was 17 days after the limitations period expired.

## CONCLUSION

For the reasons stated above, I recommend that the Court grant with prejudice the State's motion to dismiss the petition. I further recommend that a certificate of appealability should not

---

[4] January 19, 2012, fell on a Thursday and was not a legal holiday, so I need not turn to the portion of Fed. R. Civ. P. 6(a)(1)(C) that addresses when the last day falls on a Saturday, Sunday, or legal holiday.

issue in the event Santiago files a notice of appeal because there is no substantial showing of the

denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c).

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 13, 2013                                  /s/ Margaret J. Kravchuk
                                              U.S. Magistrate Judge